# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH GIANNONE, SENIOR and JOSEPH GIANNONE, INC., t/a JOSEPH GIANNONE PLUMBING & HEATING, <br>           Plaintiffs, <br> v. <br><br> JOSEPH GIANNONE, JUNIOR and JOSEPH GIANNONE HEATING & AIR CONDITIONING, INC., t/a JOSEPH GIANNONE PLUMBING • HEATING • AIR CONDITIONING, <br>           Defendants. | CIVIL ACTION <br> No. 16-cv-911 |

**McHUGH, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　December 18, 2019

## MEMORANDUM

  A lamentable father-son conflict over a family plumbing business provides the backdrop for this Lanham Act case. The father, Joseph Giannone, Senior, seeks summary judgment on his Lanham Act trademark infringement and unfair competition claims against his son, Joseph Giannone, Junior, as well as on Junior's counterclaims. In order to prevail in his Lanham Act claims, Senior must be able to show that the marks that form the basis of his suit are valid and protectable. Although Senior has registered the marks at issue with the United States Patent and Trademark Office (USPTO), which ordinarily entitles them to a presumption of validity, Junior has timely contested their validity such that Senior must make an additional showing that the marks have developed secondary meaning in the minds of consumers. Because Senior has failed to meet his burden of demonstrating secondary meaning, his Motion for Summary Judgment must be denied.

## I. Factual and Procedural Background

Senior has owned and operated a plumbing and heating business in Philadelphia under the name Joseph Giannone Plumbing & Heating since 1983, though he first registered the name JOSEPH GIANNONE (the '809 Registration) and the JOSEPH GIANNONE PLUMBING & HEATING (the '749 Registration) marks with the USPTO in 2015, and a stylized JOSEPH GIANNONE PLUMBING & HEATING mark with the pipe and wrench logo (the '571 Registration) in 2017. MSJ at 2-3, ECF 69. The mark and logo consist of an image of a pipe and wrench and the name of the business in a blue and yellow color scheme—two versions follow:

 

Junior worked as Senior's employee for a period of time. But, in 2008, Junior founded his own business—Joseph Giannone Heating & Air Conditioning—which he operated out of Senior's Philadelphia business office. At that time, Junior's business was confined to HVAC work—heating, ventilation, and air conditioning repair—that did not compete with Senior's business, particularly Senior's plumbing business. Also during this time, Senior's and Junior's businesses shared not only office space but also telephone lines, shop space, repair trucks, and even employees. Both businesses used Senior's marks, and all went well enough for a period of time.[1] But, in 2013, after some conflicts with Senior, Junior moved his business out of Senior's office space in Philadelphia to Folcroft, PA; expanded into plumbing services that competed with Senior's business; and advertised his business using this logo:

---

[1] Junior contends that he actually took on the bulk of the costs of developing and propagating the marketing materials at this time. Def. Opp. to MSJ at 6, ECF 71-2. Junior also contends that he and Senior used Senior's marks, along with Junior's Plumbing • Heating • Air conditioning logo, interchangeably while they were working together. *Id*.



Despite the fact that Junior's business now maintained a physical presence outside the City of Philadelphia, Junior advertised heavily within the same Philadelphia zip codes served by Senior's plumbing business using the Joseph Giannone Plumbing • Heating • Air Conditioning logo. Junior even went as far as to place his logo on the side of a building half a mile from Senior's business.

This litigation followed, with Senior and his business Joseph Giannone Plumbing & Heating as co-plaintiffs suing Junior and his business Joseph Giannone Plumbing • Heating • Air Conditioning under the Lanham Act and Pennsylvania common law. Junior counterclaimed, asserting breach of contract, tortious interference with current and prospective business relations, Pennsylvania common law trademark infringement, and various Lanham Act claims including unfair competition, false designation of origin, and false advertising. Extensive and prolonged discovery has followed and Senior now seeks summary judgment on his Lanham Act trademark infringement, unfair competition, and false advertising claims, as well as his supplemental Pennsylvania state law trademark infringement claim. He seeks injunctive relief, compensatory damages, an accounting and disgorgement of profits, treble statutory damages, and attorney's fees.

## II.     Standard of Review

This case is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56, as elaborated in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In cases that turn on credibility determinations, summary judgment is inappropriate. *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144 (3d Cir. 1993).

**III. Discussion**

    **A. Senior is not entitled to summary judgment on his Lanham Act trademark infringement and unfair competition claims, related state law claims, nor on his Lanham Act false advertising claim**

The Lanham Act protects against "the use of trademarks which are likely to cause confusion, mistake, or deception of any kind." *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 711 (3d Cir. 2004) (cleaned up).[2] Plaintiffs' principal claims under the Lanham Act—federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A)—are measured "by identical standards." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). "To prove either form of Lanham Act violation, a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *Id.* at 210-11. The plaintiff bears the burden of proof. *Id.* at 210.

Notwithstanding the marks' registration with the USPTO, Senior has failed to show that they are legally protectable as Junior has contested their validity in a timely fashion. Senior correctly asserts that "[a] certificate of registration of a mark upon the principal register . . . shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce or in connection with the goods or services specified in the certificate." 15 U.S.C. § 1057(b); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142-43 (2015). If, however, a federally registered mark is contested within five years of its registration, *Commerce Nat. Ins. Services, Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 n.4 (3d Cir. 2000), 15

---

[2] This opinion uses (cleaned up) to indicate that extraneous, non-substantive information—such as internal quotation marks, alterations, and citations—has been omitted from quotations. *See, e.g.*, *United States v. Steward*, 880 F.3d 983, 987 (8th Cir. 2018); *United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017).

U.S.C. §§ 1058, 1065, then "validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive." *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 291 (3d Cir. 1991). The earliest registration of one of Senior's marks was in 2015, and Junior has contested the validity of all three marks since this litigation began; thus the presumption of validity falls away, and Senior must show that the marks have developed secondary meaning.[3] Given the current posture of the case and the inconclusive record before me, I cannot decide the issue of secondary meaning as a matter of law.[4]

"Secondary meaning is a term of art in trademark law that refers to a mental association in buyers' minds between the alleged mark and a single source of the product." *Parks LLC v. Tyson Foods, Inc*, 863 F.3d 220, 226 (3d Cir. 2017) (cleaned up). In other words, the stronger the connection in the minds of consumers between the mark and the source of the good or service in question, the stronger the likelihood that the mark has attained secondary meaning. The Third Circuit has articulated a lengthy, but non-exclusive, list of factors for determining whether a mark has acquired secondary meaning, which includes: (1) extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) fact of

---

[3] Senior will not be able to show that the marks are inherently distinctive, because it is axiomatic that marks based on "[p]ersonal names can serve as a trademark, but they are considered 'descriptive,' not inherently distinctive marks, so they are treated as protectable trademarks only upon a showing of distinctiveness and secondary meaning." *Tillery v. Leonard & Sciolla, LLP*, 437 F. Supp. 2d 312, 320-21 (E.D. Pa. 2006) (internal citations omitted); *see also Checkpoint Systems Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 282-83 (3d Cir. 2001); 2 McCarthy on Trademarks and Unfair Competition § 13:2. "A 'descriptive' term is one that directly and immediately conveys some knowledge of the characteristics of a product or service." *Id.* at § 11:16.

[4] Senior argues that two of his registrations, the '749 Registration (including "plumbing and heating" with Joseph Giannone) and the '571 Registration (including the pipe and wrench logo) are inherently distinctive because they contain term and design elements beyond his name, and thus he does not need to show that they have acquired secondary meaning. While courts do evaluate marks in their totality, these modifications are not sufficient to find that they are inherently distinctive. The terms "plumbing and heating" are merely descriptive of the services being offered by Senior. *See Philbrick v. eNom, Inc.*, 593 F. Supp. 2d 352, 368 (D.N.H. 2009) (holding that "Philbrick's Sports" was not inherently distinctive because mark simply signifies a "sporting-goods business associated with someone named Philbrick"). The pipe and wrench logo serves a similar function, and as pointed out by Junior, other plumbers in the industry have used the same exact pipe and wrench logo in their marketing, which would further support a finding that the logo is descriptive rather than inherently distinctive.

5

copying; (5) customer surveys; (6) customer testimony; (7) use of mark in trade journals; (8) size of company; (9) number of sales; (10) number of customers; and (11) actual confusion. *Commerce Nat. Ins. Services, Inc.*, 214 F.3d at 438.

Senior bears the burden of demonstrating that application of these factors would conclusively establish that the marks at issue have acquired secondary meaning. To support his case, Senior emphasizes that he has been utilizing the marks from the founding of his business in 1983; avers that there has been actual confusion among consumers between his and Junior's businesses, leading to customers mistakenly contacting one business instead of the other; and that Junior has engaged in unauthorized copying of the marks. In countering Senior, Junior disputes the extent of Senior's advertising before Junior helped initiate what Junior characterizes as a joint marketing effort; claims that the telephone routing system in place between them has effectively prevented confusion; that there was a verbal agreement between himself and Senior regarding the use of the "Joseph Giannone" name; and that Senior has not produced sufficient evidence regarding how familiar consumers are with the marks.

Consequently, determining whether the *Commerce National* factors ultimately weigh in favor of Senior or Junior depends on the credibility of each party's account of when, how, and by whom the marks came to be circulated; whether there was an agreement governing each parties' usage of the marks, and if there were one, what the substance of the agreement entailed; and whether there has been actual confusion between their businesses. Moreover, Junior is correct that Senior has offered little in the way of customer testimony or surveys that would indicate how strong consumers' mental associations are between the marks and Senior's business. For these reasons, it would be inappropriate to grant affirmative summary judgment on Senior's Lanham Act trademark infringement and unfair competition claims. Senior's Pennsylvania

6

common law trademark infringement and unfair competition claims fail for the same reasons, as "[t]he test for [Pennsylvania] common law trademark infringement and unfair competition is essentially the same as the test for infringement and unfair competition under the Lanham Act." *Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc.*, 94 F. Supp. 2d 566, 580 (E.D. Pa. 1999); *see also Pennsylvania State Univ. v. University Orthopedics, Ltd.*, 706 A.2d 863, 870 (Pa. Super. Ct. 1998).

Finally, although Senior asserted a Lanham Act false advertising claim in his Complaint and seeks summary judgment on it here, he raised no argument on this claim in his motion. Therefore, I am unable to grant summary judgment on it.

**B. Senior is not entitled to summary judgment on Junior's counterclaims**

Although the counterclaims brought by Junior do not present with any great strength, they are marginally strong enough to withstand summary judgment.

*1. Breach of Contract*

Junior alleges that Senior has breached two separate oral agreements. One, Junior asserts, was an oral agreement to "use each other's names, marks, logos and marketing materials in the joint marketing of each other's businesses." Answer ¶ 79, ECF 36. The other was an agreement with Senior whereby Senior's business would refer "HVAC work" to Junior's business and Junior's business would refer "plumbing or hydronic work" to Senior's business. Answer ¶ 89. Senior seeks summary judgment as to both counterclaims.

The elements of a breach of contract claim in Pennsylvania are: (1) the existence of a contract, including its essential terms; (2) breach of a duty imposed by the contract; and (3) resultant damages. *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). Every element must be specifically pled. *Id.* Under Pennsylvania law, the elements of a valid

and binding contract are: (1) the manifestation of an intent to be bound by the terms of the agreement; (2) sufficiently definite terms; and (3) an agreement supported by adequate consideration. *Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511, 516 (Pa. Super. Ct. 1995).

As to Junior's first assertion—that there was breach of an agreement to share names, marks, logos, and marketing materials—there remain issues of fact. It appears that Junior and Senior did freely share these materials for multiple years before this litigation began, including the Plumbing • Heating • Air Conditioning mark associated with Junior's business, and Junior's allegations that this sharing was governed by an oral agreement is plausible. Junior further claims that Senior breached his obligations under the agreement to promote and market the marks as had been negotiated, and that Junior subsequently incurred additional expenses for the sake of promoting the marks. Although Senior makes reasonable arguments against Junior's position, regarding the existence of the contract and the scope of its terms, the record remains equivocal.

For similar reasons I cannot grant summary judgment as to Junior's claim arising out of referrals. Admittedly, to the extent Junior means to argue that the two would continue to refer new customers to each other even after Junior began offering plumbing services on his own, such conduct would be unusual. Junior alleges, however, that Senior had stopped referring customers to him under their agreement even before he began to offer competing plumbing services, and that he, Junior, continues to re-route potential customers to Senior that he knows were originally his without receiving the same consideration in kind.

*2. Tortious Interference*

Junior brings counterclaims for tortious interference with existing contractual relationships and prospective contractual relationships. "Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a plaintiff must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference." *Acumed LLC v. Advanced Surgical Services, Inc.*, 561 F.3d 199, 212 (3d Cir. 2009) (cleaned up).

Junior asserts that a letter Senior sent out to some of Junior's current customers, as well as to prospective future customers, suffices as evidence that Senior intentionally sought to harm Junior's business and reputation in the community, and that he succeeded in diverting clients and business from Junior. He points to these purportedly problematic statements in the letter:

> It has come to our attention that you may have just received a letter from Joseph Giannone Plumbing Heating and Air Conditioning telling you about the plumbing services they offer. This is not our business nor do we have any affiliation with this business. Please keep in mind that this business that sent you this letter has only been established for 5 years, not the 90 plus years as it is claiming.

Ex. J, ECF 60-3. Senior finished the letter by offering a discount for customers to do business with Senior.

Once again, though Junior will have the burden of proving each element of both claims, because I am required to resolve all inferences in favor of the non-moving party at this stage of the litigation, on this record material issues of fact remain.

   *3. Unfair Competition, Trademark Infringement, and False Designation of Origin*

Junior also brings counterclaims for unfair competition and false designation of origin under the Lanham Act, along with common law counterclaims for unfair competition and trademark infringement. As discussed above, to prevail on an unfair competition or trademark infringement claim, the claimant must show that he owns a valid and legally protectable mark. *A & H Sportswear, Inc.*, 237 F.3d at 210-11 (cleaned up). Upon initial consideration, Junior's counterclaims for unfair competition and trademark infringement appear inconsistent with his parallel attack upon the very validity of these same marks due to a lack of secondary meaning. I am aware, however, that in challenging the marks, Junior has alleged in part that he and Senior both had been *jointly* using the marks for a period of years pre-dating Senior's USPTO registrations. ECF 72-8, 72-9, 72-10. Given these pending cancellation petitions, and the overall posture of the case, summary judgment is not warranted.

Nor is summary judgment warranted on Junior's false designation of origin claim for the same reasons, as the analysis is much the same. To succeed on this claim, Junior must show that Senior "falsely designated the origin of its services" in the use of the marks at issue. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1428 (3d Cir. 1994). The elements of a false designation of origin claim under Section § 43(a)(1)(A) of the Lanham Act overlap significantly with those of unfair competition or trademark infringement, with the exception that the party bringing the claim need not demonstrate valid registration. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) ("[U]nder the Lanham Act, the

ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks . . . . Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion?'") (cleaned up); *Union Manufacturing Co., Inc. v. Han Baek Trading Co., Ltd.*, 763 F.2d 42, 47-48 (2d Cir. 1985) ("[T]he claim [of false designation of origin] is now frequently recognized, with regard to unregistered marks, as the equivalent of a claim for trademark infringement."). Factual issues remain as to these claims.

### 4. False Advertising

Junior's false advertising claim survives summary judgment as well. The Lanham Act prohibits the "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a). To prevail on such a claim, Junior must prove: (1) that Senior has made false or misleading statements as to Senior's own product or another's; (2) that there is actual deception or a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, and loss of good will. *See Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (cleaned up).

In support of this claim, Junior points to three statements in a letter Senior distributed in 2015, although only one truly gives rise to a genuine issue of material fact. Junior Dep. at 224, ECF 69-7.[5] Junior points to Senior's statement that Junior's business had only been established

---

[5] First, he points to Senior's statement in that letter that Senior employed "licensed and trained professionals" as a purportedly false statement. Junior Dep. 229-233. But when pressed in his deposition as to which of Senior's

11

for 5 years (i.e., established in 2010) when it in fact had been established in 2008. Junior Dep. 233-234. Junior argues this misstatement had the effect of "tell[ing] the reader the Defendants are liars and that the customer and prospective customer shouldn't do business with Defendants." Def. Opp. to MSJ at 34. Senior argues that this is a *de minimis* statement that does not rise to the level of false advertising, and Senior asserts that there is no evidence of any revenue lost as a direct result of the false statements. But that is not the proper inquiry. Instead, I must ask whether there is a *likelihood of injury* to Junior in terms of declining sales and loss of good will. I find there to be a genuine dispute on this fact.

A reasonable jury could find that Senior's false statement in the letter not only strips Junior's business of two years of experience, but more importantly implies that Junior's business misrepresents itself. This false statement could reasonably cause a household consumer of plumbing services to choose a different service provider, thereby causing Junior to lose sales.

Junior also points to items on Senior's website as evidence of false advertising. Specifically, he asserts that (1) the website incorrectly states that Joseph Giannone Plumbing & Heating was founded in 1929; (2) Senior took over his father's business in 1978; (3) and the business has served the Philadelphia region for more than 85 years. Senior admits that he founded his business in 1983 (not 1929) and so all these statements regarding Senior's plumbing business are indeed facially false. A reasonable jury could find that these statements were intended to deceive the consumer public into believing that Senior's business was more

---

professionals lacked the requisite training, Junior had no answer. Junior Dep. at 231. Second, Junior argues that Senior's reference in the letter that Senior's business does not have any affiliation with Junior's business is a false statement. But Junior also testified that, while Senior and Junior worked together for some years, there is currently no overlapping ownership between the two businesses. Junior Dep. 267-268. This testimony, then, does not lend strong support Junior's argument.

established than it was. A reasonable jury could also find that such a belief could likely influence purchasing decisions, including away from Junior's more recently established business.

## IV. Conclusion

Senior bears the burden of establishing secondary meaning, and the record here does not suffice to establish it as a matter of law. Accordingly, his affirmative motion for summary judgment must be denied. Junior's counterclaims, though hardly robust, have enough support to avoid summary judgment.

An appropriate Order follows.

/s/ Gerald Austin McHugh  
United States District Judge